THOMAS O. MARSHALL, Jr., ADMINISTRATOR OF THE ESTATE OF NED MARSHALL, DECEASED, PLAINTIFF-APPELLANT, v. GEO. M. BREWSTER & SON, INC., A CORPORATION OF N. J., ET AL., DEFENDANTS-RESPONDENTS.

Argued February 5, 1962—Decided April 2, 1962.

*Mr. Stanley W. Greenfield* argued the cause for the appellant.

*Mr. James A. Major* argued the cause for the respondents (*Mr. James I. Toscano,* attorney; *Mr. James A. Major, II,* on the brief).

The opinion of the Court was delivered by

JACOBS, J. The Appellate Division reversed the Law Division's denial of the defendants' motion for summary judgment. See *Marshall v. Geo. M. Brewster & Son, Inc.,* 68 *N. J. Super.* 399 (*App. Div.* 1961). We granted certification on the plaintiff's application.

The decedent Ned Marshall was killed at a railroad crossing in Pittsburgh, Pennsylvania, when the automobile in which he was a passenger was struck by a train. The accident and death occurred on October 2, 1958. At a later date the plaintiff Thomas O. Marshall, Jr., a resident of Ohio, was appointed as administrator of the decedent's estate. On February 5, 1960 the administrator filed a complaint in the Law Division of the New Jersey Superior Court seeking damages from the defendants. The complaint alleged that the defendants Geo. M. Brewster & Son, Inc., a corporation of the State of New Jersey, Terminal Construction Corporation, a corporation of the State of New Jersey, Joseph Miele Construction Company, Inc., a corporation of the State of New Jersey, Lafera Contracting Company, Inc., a corporation of the State of New Jersey, and Alphonsinia Salvatore, Philip R. Salvatore, Joseph Salvatore, and Anthony J. Salvatore, partners of C. Salvatore & Sons, a partnership, were engaged in a joint venture under the trade name of Mole Constructors and were performing work in and about the crossing; that they had employed and assumed to employ a watchman to warn travelers on the highway of the approach of oncoming trains; and that by reason of the negligence of the aforenamed defendants as well as the defendant John H. Gordon, an agent of Mole Constructors and the operator of the automobile in which the decedent was riding, the decedent had been fatally injured. The defendants, other than the defendant John H. Gordon, filed an answer in which they set forth various defenses, including an assertion that any claim for wrongful death as set forth in the complaint was barred "by the Statute of Limitations, as provided by the laws of the State of Pennsylvania." On November 2,

1960 Judge Waesche stated that he was unable to determine whether the limitation in the Pennsylvania statute was a "termination of the substantive right of action itself, or a procedural bar to the remedy only." Accordingly, he denied the motion for summary judgment under the stated authority of *Ennis v. Petry*, 29 *N. J.* 236 (1959). On appeal, pursuant to leave (*R. R.* 2:2–3(*a*)), the Appellate Division concluded that the plaintiff's action should have been brought within the one-year period prescribed in the Pennsylvania statute (see *Pa. Stat. Ann. tit.* 12, § 1603 (1953)) and that judgment should be entered in favor of the defendants. See 68 *N. J. Super.* at 405.

The plaintiff contends that the one-year period prescribed in the Pennsylvania statute is "merely a statute of limitations and is not one conditioning the right of action" and that, consequently, the New Jersey court should apply the two-year limitation in its wrongful death act rather than Pennsylvania's limitation. See *Smith v. Smith,* 90 *N. J. L.* 282, 286 (*E. & A.* 1917); *Jaqui v. Benjamin,* 80 *N. J. L.* 10, 11 (*Sup. Ct.* 1910); *Summerside Bank v. Ramsey,* 55 *N. J. L.* 383, 384 (*Sup. Ct.* 1893); *McClellan v. F. A. North Co.,* 14 *N. J. Misc.* 760, 770, 187 *A.* 337 (*Sup. Ct.* 1936); *Leek v. Wieand,* 2 *N. J. Super.* 339, 350 (*Ch. Div.* 1949); cf. *Wright v. Kroydon Co.,* 9 *N. J. Misc.* 287, 289, 154 *A.* 195 (*Cir. Ct.* 1931); *N. J. S.* 2A:31–3. The respondents contend that "the plaintiff should not occupy a better position in New Jersey than in Pennsylvania" and that "the State of New Jersey is not a convenient forum for the trial of this action," citing *Starr v. Berry,* 25 *N. J.* 573 (1958) and Taintor, "Conflict of Laws, 1958–1959 Survey of Pennsylvania Law," 21 *U. Pitt. L. Rev.* 153, 160 (1959). They also refer to the pendency in the United States District Court for the Western District of Pennsylvania of an action which seeks recovery under the Pennsylvania Survival Act (see *Pa. Stat. Ann. tit.* 20, § 320.601 (1950)) and not under its Wrongful Death Act. See *Pa. Stat. Ann. tit.* 12, § 1601 (1953). The claim asserted by the plaintiff in his New

Jersey action is grounded on section 1601 of Pennsylvania's Wrongful Death Act and not on its Survival Act and we assume that in no event will duplication of recovery be permitted. Under the circumstances we consider that the pendency of the action in the United States District Court has no bearing on the issue presented to us for determination.

 It is well settled that where, as here, the alleged wrong upon which the plaintiff rests his New Jersey action occurred in Pennsylvania, the New Jersey court will apply the substantive law of Pennsylvania as it finds it. See *In re Carpenter*, 142 *N. J. Eq.* 772, 774 (*E. & A.* 1948); *Restatement, Conflict of Laws* § 391 (1934); 2 *Beale, Conflict of Laws* § 391.1 (1935). It is equally well settled that the New Jersey court will apply its own rules of procedure in the action pending here rather than the rules of procedure which the Pennsylvania court would have applied if the action had been instituted there. See *Ferguson v. Central R. R. Co.*, 71 *N. J. L.* 647, 651 (*E. & A.* 1905); *Bullock v. Bullock*, 51 *N. J. Eq.* 444, 450 (*Ch.* 1893), affirmed 52 *N. J. Eq.* 561, 27 *L. R. A.* 213 (*E. & A.* 1894); *Wood v. Malin*, 10 *N. J. L.* 208, 211 (*Sup. Ct.* 1828); *Restatement, supra* § 585. This latter principle is said to rest on considerations of convenience and practicability since the local bench and bar may not fairly be expected to familiarize itself with the procedural diversities of the various jurisdictions. See *Bournias v. Atlantic Maritime Co.*, 220 *F.* 2d 152, 154 (2 *Cir.* 1955); Comment, 15 *Rutgers L. Rev.* 620, 623 (1961). Although these considerations would appear to have little pertinency to the bar of limitations, it is generally held that ordinary statutes of limitation are to be viewed as procedural in nature and therefore subject to the law of the forum. See *Smith v. Smith, supra; Leflar, The Law of Conflict of Laws* § 66 (1959); Lorenzen, "The Statute of Limitations and the Conflict of Laws," 28 *Yale L. J.* 492 (1919). It is true that this approach may be criticized as permitting recovery by a litigant whose cause of action has been barred at the place it arose, but this may be counter-

balanced by the thought that the litigant is merely seeking to assert a just claim within the reasonable though lengthier period of limitation of the state where the wrongdoing defendant is actually found and served. Affording a choice of forum may sometimes be disfavored (see *Gore v. United States Steel Corp.,* 15 *N. J.* 301, 313 (1954)) but it is not invariably evil in purpose or effect. See *Boyle v. G. & K. Trucking Co.,* 37 *N. J.* 104. It is worthy of note that, unlike the legislatures of some of the other states, the New Jersey Legislature has not seen fit to adopt a so-called "borrowing statute" under which the shorter limitation of the foreign state where the cause of action arose is always to be applied to the local action. See *Leflar, supra* § 66, *p.* 120; Note, "Legislation Governing the Applicability of Foreign Statutes of Limitation," 35 *Colum. L. Rev.* 762 (1935).

■ When the legislature of a state creates or recognizes a right, it may, if it so chooses, subject it to a limitation in such manner that the right is to terminate upon expiration of the limitation. In such case, the limitation will be viewed not as simply procedural but as part of the state's substantive law to be given effect as such in other states as well as in the state of the enactment. See 3 *Beale, supra* § 604.3, *p.* 1022; *Goodrich, Conflict of Laws* § 86, *p.* 242 (3*d ed.* 1949). Thus when a legislature adopts a wrongful death act which sets forth a limited period within which suit may be instituted, the legislature may intend that the limitation shall actually condition the right and that the right shall be automatically extinguished in the event suit is not instituted within the prescribed period. On the other hand, the legislature may intend that the limitation operate not as a condition of the right but as the ordinary statute of limitations which is customarily viewed as procedural. Most courts, though by no means all, have construed the limitations in their wrongful death acts as substantively conditioning the rights granted and such construction has been given effect elsewhere. See 3 *Beale, supra* § 605.1; *Leflar, supra* § 66, *p.* 121; *Restatement, supra* § 605. However, in

instances where the courts of the enacting states have construed the limitations in their own wrongful death acts, not as conditioning the rights granted but as simply procedural in nature, other courts have followed the same course and have applied the limitation of the forum rather than the limitation of the state where the cause of action arose. See *Goodwin v. Townsend,* 197 *F. 2d* 970, 972 (3 *Cir.* 1952); Note, "Statutes of Limitation: Lex Loci or Lex Fori," 47 *Va. L. Rev.* 299, 307 (1961).

In our own State the Legislature first enacted a wrongful death act in 1848. See *L.* 1848, *p.* 151. That statute set forth that the proceeding shall be brought by the personal representative, *"provided,* that every such action shall be commenced within twelve calendar months" after the death of the person wronged. When our courts came to construe this enactment and its successors they viewed the proviso as a "limitation of liability" and held that the bringing of the action within the 12-month period was an essential element of the plaintiff's cause of action which had to be set forth as part of his complaint. See *Lapsley, Adm'x v. Public Service Corp.,* 75 *N. J. L.* 266, 267 (*Sup. Ct.* 1908); *Brelthauer, Adm'r, v. Jacobson,* 79 *N. J. L.* 223, 225 (*Sup. Ct.* 1910). Notwithstanding some later changes in the statutory phraseology (see *R. S.* 2:47-3; *N. J. S.* 2*A*:31-3) our courts have adhered to their position that the two-year limitation in New Jersey's wrongful death act is not a "statute of limitations in the ordinary or general sense" (see *Eldridge v. Phila. & Reading R. R. Co.,* 83 *N. J. L.* 463, 465 (*E. & A.* 1912)) but is a condition of the right granted. See *Peters v. Public Service Corp.,* 132 *N. J. Eq.* 500 (*Ch.* 1942), affirmed 133 *N. J. Eq.* 283 (*E. & A.* 1943). We need not now consider whether our interpretation of the legislative purpose and effect would be the same if the matter were *res nova;* for present purposes, it is sufficient to state that the interpretation by our courts has been a long standing one which has been consistently honored in other states. See *Pack v. Beech*

*Aircraft Corporation*, 50 *Del*. 413, 132 *A. 2d* 54, 67 *A. L. R. 2d* 207 (1957); *Schwertfeger v. Scandinavian American Line*, 186 *App. Div*. 89, 174 *N. Y. Supp*. 147 (1919), affirmed 226 *N. Y*. 696, 123 *N. E*. 888 (1919). In the *Pack* case the Supreme Court of Delaware noted that "under well-settled principles of conflict of laws" it must accept the construction placed upon New Jersey's wrongful death act by the New Jersey courts (50 *Del*. 413, 132 *A. 2d*, at *p*. 56) and in the *Schwertfeger* case the New York court, after citing the pertinent New Jersey cases, pointed out that it was "bound by the interpretation placed upon the foreign statute by the highest court in the foreign state." See 174 *N. Y. Supp*., at *p*. 149. See also *McKinney v. Schuster*, 202 *Misc*. 450, 110 *N. Y. S. 2d* 74, 79 (*Sup. Ct*. 1952); *Weiss v. Baviello*, 203 *Misc*. 1031, 117 *N. Y. S. 2d* 891, 893 (*Sup. Ct*. 1952); *Moore v. Atlantic Coast Line R. Co*., 153 *F. 2d* 782 (2 *Cir*. 1946); *Dupuis v. Woodward*, 97 *N. H*. 351, 88 *A. 2d* 177 (1952).

In *Sharrow v. Inland Lines*, 214 *N. Y*. 101, 108 *N. E*. 217, *L. R. A*. 1915E, 1192 (1915), the New York court had occasion to discuss whether it would view the limitation in its wrongful death act as a condition of the right or as an ordinary statute of limitations. The lower court sustained a demurrer to the plaintiff's complaint because it failed to show that his action had been commenced within the two-year period prescribed by the act. The Court of Appeals reversed, holding that the two-year provision was "a limitation upon the remedy [and not] upon the right." In the course of its opinion it placed weight upon the fact that, while the two-year limitation in the original act was in the form of a proviso, a later amendment replaced the proviso with a direct declaration that the action "must be commenced within two years after the decedent's death." See 108 *N. E*., at *p*. 218. Other state courts will presumably honor New York's interpretation of its act and apply their own statutes of limitation in local actions grounded on wrongful deaths in New York. *Cf. Goodwin v. Townsend, supra; Keys v.*

*Pullman Co.,* 87 *F. Supp.* 763 (*S. D. Tex.* 1949); *Hughes v. Hinson's Garage, Inc.,* 9 *A. D. 2d* 1014, 194 *N. Y. S. 2d* 324 (*App. Div.* 1959); *Panzironi v. Healh,* 197 *Misc.* 847, 95 *N. Y. S. 2d* 660 (*Sup. Ct.* 1950). See *Ennis v. Petry, supra.* Several of the states have taken a position comparable to New York's in construing the limitations in their own wrongful death acts as nothing more than ordinary statutes of limitation. See *Wohlgemuth v. Meyer,* 139 *Cal. App. 2d* 326, 293 *P. 2d* 816 (1956); *Brookshire v. Burkhart,* 141 *Okl.* 1, 283 *P.* 571, 67 *A. L. R.* 1059 (1929); *Chiles v. Drake,* 59 *Met.* 146, 74 *Am. Dec.* 406 (*Ky.* 1859); *cf. Seely v. Cowley,* 12 *Utah 2d* 252, 365 *P. 2d* 63 (1961); *Edison v. Lewis,* 325 *P. 2d* 955 (*Okl.* 1958).

We come now to the consideration of the limitation in the Pennsylvania statute as it has been construed by the Pennsylvania courts. In 1851 the Pennsylvania legislature passed an act which provided, in section 18, that a plaintiff's action for negligent injury shall not abate upon his death and, in section 19, that whenever death shall be occasioned by unlawful violence or negligence and no action is brought by the injured party during his lifetime, his widow may maintain an action for damages for the death thus occasioned. 1851, April 15, *P. L.* 669, §§ 18–19. This enactment did not embody any limitation of time within which the action had to be instituted. Compare *The Harrisburg v. Rickards,* 119 *U. S.* 199, 214, 7 *S. Ct.* 140, 30 *L. Ed.* 358, 362 (1886) with *Davis v. Mills,* 194 *U. S.* 451, 454, 24 *S. Ct.* 692, 48 *L. Ed.* 1067, 1070 (1904). In 1855 the Pennsylvania legislature adopted "An Act Relating to Damages for Injuries Producing Death" which, in section 1, identified the persons entitled to recovery and, in section 2, set forth that "the action shall be brought within one year after the death, and not thereafter." 1855, April 26, *P. L.* 309, 12 *P. S.* §§ 1602, 1603. In *Rosenzweig v. Heller,* 302 *Pa.* 279, 153 *A.* 346 (1931), the wrongful death occurred in New Jersey and the action was instituted in Pennsylvania. The court declined to apply New Jersey's two-year limitation

but applied its own one-year period to bar the plaintiff-appellee's action. Although the court's actual holding is merely representative of the decisions which apply the forum's shorter period of limitation without regard to the nature of the foreign right (*Goodrich, supra* § 86, *p.* 243; *Wells v. Simonds Abrasive Co.,* 345 *U. S.* 514, 73 *S. Ct.* 856, 97 *L. Ed.* 1211 (1953); Annot., 146 *A. L. R.* 1356 (1943)), the breadth of its language is of pertinence here. Thus it cited, with approval, the decision in *Sharrow v. Inland Lines, supra,* noting that there the New York Court of Appeals had apparently reached the conclusion that "statutes worded as is our act of 1855 are statutes of limitation." In concluding its opinion the Pennsylvania Supreme Court had this to say through Justice Schaffer:

"Appellee's attorneys take the position that the Pennsylvania act is not a general statute of limitation; that when a cause of action is created by a statute which limits the time within which an action may be commenced, such limitation, whether accompanied by express words of condition or not, is regarded as a limitation or condition of the cause of action itself. While certain cases from other jurisdictions apparently so hold, we think our own decisions heretofore cited foreclose the question against appellee's contention. The very language of the act marks it as a statute of limitation, not as one conditioning the right of action." 302 *Pa.* 279, at *p.* 287, 153 *A.* 346, at *p.* 348.

See also *Smith v. Pennsylvania R. Co.,* 304 *Pa.* 294, 156 *A.* 89, 91 (1931); *Seneca v. Yale & Towne Mfg. Co.,* 142 *Pa. Super.* 470, 16 *A.* 2d 754, 757 (1940).

In *Echon v. Pennsylvania R. Co.,* 365 *Pa.* 529, 76 *A.* 2d 175 (1950), the decedent was accidentally killed in Pennsylvania and his representative instituted an action in Pennsylvania under its Wrongful Death Act. The complaint did not allege that the action was instituted within the one-year limitation period prescribed by the Act of 1855. *Cf. Lapsley, Adm'x v. Public Service Corp., supra; Wood & Selick v. Compagnie Generale Transatlantique,* 43 *F.* 2d 941, 943 (2 *Cir.* 1930). In fact the action was not instituted until almost two years after the wrongful death but the defendant did not set forth in its answer any defense based on limi-

tations. Shortly before the trial date, the defendant's counsel advised counsel for the plaintiff that he would seek leave to assert the one-year limitation in the 1855 Act as a defense. The trial court denied such leave and in due course a judgment was entered for the plaintiff. On appeal, the Pennsylvania Supreme Court sustained the trial court's action and affirmed the judgment. In the course of his opinion for the entire court, Justice Chidsey rejected the defendant's contention that the one-year time limit was a limitation upon the right itself rather than a limitation upon assertion of the right and pointed out that in *Rosenzweig* the court had said "that the Act of 1855 was a general statute of limitations." Later in his opinion the Justice stated flatly that "the Act of 1855 does not create the right and will not now be construed as a condition attaching to the right created by the Act of 1851." See 76 *A. 2d,* at *p.* 177.

As we read the opinions in *Rosenzweig* and *Echon,* Pennsylvania views the limitation in its 1855 Act as nothing more nor less than a general statute of limitations. *Echon* indicates that the local policy considerations underlying the limitation in the 1855 Act are neither greater nor different than the local policy considerations underlying the ordinary statutes of limitation which, although they may affect remedies, admittedly do not condition rights. While it is true that such rights are generally common law rights rather than statutory rights, this distinction would not appear to have any real significance since the legislature is entirely free, in the creation of new statutory rights, to subject them to the operation of limitations in the identical form and manner as common law rights. When the legislature chooses to take this latter course rather than to condition the new statutory rights, it is presumably aware that foreign states will, under conflict of laws principles, apply their own limitations rather than Pennsylvania's limitation. Indeed, this is what actually happened following the assertion by the Pennsylvania Supreme Court that Pennsylvania's one-year

limit does not condition the right of action for wrongful death but merely prescribes a general statute of limitations. See *Keys v. Pullman Co., supra; Hughes v. Hinson's Garage, Inc., supra; Panzironi v. Heath, supra.*

In *Keys* the wrongful death occurred in Pennsylvania and an action was instituted in the United States District Court for the Southern District of Texas. The action was brought after the expiration of Pennsylvania's one-year limit but within the two-year limit provided by Texas. In rejecting the defendant's contention that the action was barred by limitations, the court pointed out, in an opinion by Chief Judge Kennerly, that although many states view the limitations in their own wrongful death acts as conditioning the rights granted, Pennsylvania does not and has construed its one-year limit as an ordinary statute of limitations. Judge Kennerly concluded that he should follow the Pennsylvania court's construction of its statute and held that the two-year limitation of the forum rather than Pennsylvania's one-year limitation was applicable. See 87 *F. Supp.*, at *p.* 765. Similar holdings may be found in the *Hughes* and *Panzironi* cases where the New York courts entertained actions based on wrongful deaths in Pennsylvania though they were instituted after the expiration of Pennsylvania's one-year limit but before the expiration of New York's period of limitation. Professor Taintor has questioned these decisions and has suggested that, for conflict of laws purposes, Pennsylvania's one-year limitation should be viewed as either wholly substantive or both procedural and substantive. See Taintor, *supra,* 21 *U. Pitt. L. Rev.,* at *p.* 160. But in the light of the unequivocal language of the Pennsylvania Supreme Court, we see no just reason why we should view Pennsylvania's one-year limitation as any more substantive in nature than its ordinary statutes of limitation. As to these statutes there is no question that we would treat them as inapplicable and would apply our own policy and period of limitation. See *Smith v. Smith, supra; Jaqui v. Benjamin, supra; Summerside Bank v. Ramsey, supra; McClel-*

*lan v. F. A. North Co., supra; Leek v. Wieand, supra; cf. Wright v. Kroydon Co., supra.* See also *United States v. Jacobs,* 155 *F. Supp.* 182, 200–201 (*D. N. J.* 1957).

In the light of all of the foregoing, we have concluded that the one-year limitation in Pennsylvania's Act of 1855 may not be invoked to bar the plaintiff's action in New Jersey. We find nothing of substance in the respondents' contention that the plaintiff should not occupy a better position in New Jersey than he does in Pennsylvania; in every instance where, under conflict of laws principles, local rather than foreign procedural incidents are applied, the plaintiff occupies a better position to the extent that the local procedural incidents are more favorable. Nor are we at all persuaded that the doctrine of *forum non conveniens* has any proper application. The plaintiff is not a resident of Pennsylvania and there is nothing to indicate that the decedent was a resident of Pennsylvania. The respondents are mostly New Jersey corporations whose main business interests and activities are apparently in New Jersey and there is nothing to suggest that they have any current interest in, or association with, Pennsylvania. *Starr v. Berry, supra,* is relied upon by the respondents, but in that case, this court reversed the dismissal of a New Jersey proceeding and approved the principle expressed in *Gore v. United States Steel Corp., supra,* 15 *N. J.,* at *p.* 311, 48 *A. L. R.* 2d 841 that the plaintiff's choice of forum will be permitted to control except where the circumstances decisively establish that there is available another forum where "trial will best serve the convenience of the parties and the ends of justice." See 25 *N. J.,* at *p.* 584. We are entirely satisfied that the doctrine of *forum non conveniens* may not properly be applied in the circumstances at hand and note additionally that the New Jersey courts have consistently exercised jurisdiction in cases instituted here and grounded on wrongful deaths occurring in neighboring states. See *Anderson v. Delaware, L. & W. R. R. Co.,* 18 *N. J. Misc.* 153 (*Cir. Ct.* 1940); cf. *Giardini v. McAdoo,* 93 *N. J. L.* 138 (*E. & A.* 1919);

*Wasserman v. Tannenbaum,* 23 *N. J. Super.* 599 (*Law Div.* 1952) ; *Lower v. Segal,* 59 *N. J. L.* 66 (*Sup. Ct.* 1896). See also Rose, "Foreign Enforcement of Actions for Wrongful Death," 33 *Mich. L. Rev.* 545, 560 (1935).

Reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.