508 F.2d 28
 Denis HENRY, a minor by Gaston Henry and Lorraine Henry, his
natural parents and guardians, et al., Appellees,
v.
RICHARDSON-MERRELL, INC., a Delaware corporation and
Merrell-National Laboratories, Division of
Richardson-Merrell, Inc., a Delaware
Corporation, Appellants.
 No. 74-1198.
 United States Court of Appeals, Third Circuit.
 Argued Nov. 11, 1974.
Decided Jan. 22, 1975.
 
 Robert P. Gorman, Michael R. Cole, Clapp & Eisenberg, Newark, N.J., Raynes, McCarty & Binder, Arthur G. Raynes, Philadelphia, Pa., for appellees.
 Riker, Danzig, Scherer & Brown, Peter N. Perretti, Jr., James S. Rothschild, Jr., Newark, N.J., for appellants.
 Appeal from the United States District Court for the District of New jersey.
 Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This is a diversity case in which plaintiff-appellee seeks damages for personal injuries suffered as a result of his mother's ingestion of thalidomide during pregnancy. In the present appeal, appellant drug company challenges the district court of New Jersey's application of the New Jersey statute of limitation and consequent denial of its motion for summary judgment. Henry v. Richardson-Merrell, Inc., 366 F.Supp. 1192 (D.N.J., 1973).[1] The district court's interlocutory order was certified for appeal under 28 U.S.C. 1292(b).
 
 
 2
 Twelve-year old appellee, Denis Henry, is a citizen and resident of Quebec, Canada. Appellant Richardson-Merrell, Inc., is a Delaware corporation with principal offices in New York which engages in national and international drug sales. Richardson-Merrell does transact some business in New Jersey.[2]
 
 
 3
 Plaintiffs originally filed this suit in the New Hersey State courts, at which the New Jersey State courts, at which Richardson-Merrell's registered agent in New Jersey. Defendant subsequently removed the suit to federal court on grounds of diversity of citizenship.
 
 
 4
 The present controversy deals with the statute of limitation to be applied in the case at bar. Quebec prescribes a one-year delictual limitaion[3] which is not tolled for minors. New Jersey's two year personal injury limitation is tolled for minors until two years after the minor attains the age of 21.[4] The law of no other jurisdiction was pleaded by the parties.
 
 
 5
 Appellant contends that the trial court's application of the New Jersey limitation must be reversed since the expired Quebec prescription properly applies.
 
 
 6
 After careful consideration of appellant's contention, the judgment of the district court will be reversed. The suit will be dismissed as timebarred under the applicable Quebec limitation since this court concludes that the choice of law principles of New Jersey, the forum state, mandate such a result.[5]
 
 I.
 
 7
 The facts alleged by plaintiff are as follows. Lorraine Henry, mother of the infant appellee, ingested Kevadon, Richardson-Merrell's brand of thalidomide, in July of 1961 during thr first trimester of pregnancy. The drug was prescribed by a Quebec physician while Mrs. Henry was a patient in a Quebec hospital. In March of 1962, plaintiff-appellee, Denis Henry, was born in the same hospital with severe and permanent birth defects.[6]
 
 
 8
 In 1961 appellant, Richardson-Merrell, was engaged in testing, manufacturing and marketing its thalidomide tablet, Kevadon. The complaint alleges that Denis Henry's infuries resulted from Richardson-Merrell's negligent, fraudulent, willful, wanton and reckless conduct in failing properly to test, label and market the drug, in improperly obtaining government permission to market the drug, in refusing to heed and supply adequate warnings, in failing to comply with the Canadian and United States food and drug laws, in manufacturing a defective drug and in violating express and implied warranties of fitness and merchantability.
 
 
 9
 Thalidomide was developed in Germany as a sleeping pill and was licensed by the German developer to Richardson-Merrell in 1958 for manufacture and distribution in North America. Although the Canadian Drug Directorate approved use of the drug in April of 1961, the United States Food and Drug Administration withheld approval because it found testing data, supportive of the new drug application, insufficient.
 
 
 10
 During the late 1950's defendant-appellant imported the active ingredient into the United States from Germany. The ingredient was synthesized into tablets and packed at Merrell-National Laboratories in Ohio. Sometime in 1961,[7] Richardson-Merrell's subsidiary, Baker, began production of the active ingredient of Kevadon at its New Jersey plant. This ingredient was then shipped to Ohio where it was formed into Kevadon tablets and packed for shipment. The Canadian Kevadon shipments originated at the Merrell-National Laboratories in Cincinnati, Ohio.
 
 II.
 
 11
 Under Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), a federal court sitting in diversity must apply the conflicts of law principles of the forum state. In the present conflict between the laws of New Jersey and Quebec, the conflicts of law principles of New Jersey, the forum state, govern the limitation period which applies.
 
 NEW JERSEY'S CHOICE OF LAW RULES
 
 12
 In a series of cases beginning with Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967) and Pfau v. Trent Aluminum Company,55 N.J. 511, 263 A.2d 129 (1970), New Jersey courts adopted the governmental interest approach to choice of law questions. This approach requires a two-step analysis. The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy.[8] This approach does not count up contacts and make quantitative determinations of interest based on which state has the greatest number of contacts. Instead, the qualitative nature of contacts is considered so that only contacts which are likely to promote valid state policies are considered relevant. Mullane v. Stavola, 101 N.J.Super. 184, 243 A.2d 842, 845 (1968).
 
 
 13
 Until quite recently, the New Jersey governmental interest approach applied only to choices of substantive law. Procedural matters, such as the appropriate statute of limitations, were governed by forum law. In Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412 (1973), the New Jersey Supreme Court abandoned the mechanistic application of the forum statute of limitation in cases where a foreign substantive law was chosen.[9] The Heavner borrowing rule explicitly seeks to discourage forum shopping by litigants with slender ties to New Jersey who desire the benefit of New Jersey's more favorable limitation period.
 
 
 14
 In determining whether the present eause of action is timebarred, New Jersey choice of law rules therefore require a determination of which law will govern the merits of the case.[10]
 
 
 15
 In Heavner v. Uniroyal, Inc., supra, a North Carolina couple sued a tire manufacturer incorporated in New Jersey for injuries to the husband caused by the blowout of a defective tire. Plaintiff-husband purchased a truck equipped with the defective tire in North Carolina; the accident occurred in North Carolina and plaintiffs at all times were domiciled in North Carolina. Defendant manufacturer transacted business in each of the fifty states, including North Carolina and New Jersey.
 
 
 16
 The court Stated that mere incorporation in New Jersey was a contact insufficient to warrant the application of New Jersey substantive law. Since the North Carolina limitation period, borrowed with its substantive law, had already expired, the suit was dismissed.[11]
 
 
 17
 The court in Heavner did not explain its failure to examine the policies behind the laws of North Carolina and New Jersey but it is clear that there were insufficient factual contacts to justify the application of New Jersey law. Implicit in Heavner is a finding that New Jersey was a disinterested forum.
 
 
 18
 The methodology by which the court concluded that New Jersey was a disinterested forum in Heavner is not laid out. Heavner, supra, 305 A.2d at 414 n. 3. Instead the court makes reference to the earlier New Jersey cases of Mellk v. Sarahson and Pfau v. Trent Aluminum Co., supra. Applying the Mellk-Pfau governmental interest approach to Heavner, it appears that the policies evident in New Jersey's liberal products liability law would not have been fostered in the case. The primary purpose of a torts recovery is to compensate plaintiffs for their injury. Since the Heavners were domiciliaries of North Carolina, New Jersey had no interest in protecting their compensation rights. An alternate purpose of torts suits is to exact compensation from the tortfeasor in order to deter future misconduct.[12] Where the tortious activity took place wholly outside of New Jersey as in Heavner, however, that policy could not be fostered. Similarly, the longer New Jersey statute of limitation in Heavner was probably enacted with a view toward protecting New Jersey citizens in whom the legislature had an interest.
 
 
 19
 Despite New Jersey's governmental policy favoring liberal products liability recovery, there was simply no factual basis to apply that policy in Heavner.
 
 
 20
 The disinterested forum conclusion in Heavner is in contrast to Mellk v. Sarahson and Pfau v. Trent Aluminum Co. In Mellk, plaintiff and defendant were New Jersey residents who were involved in an Ohio auto accident. Plaintiff was injured while riding as a passenger in a car driven by defendant. The car was owned and insured by a New Jersey resident. The court in Mellk refused to apply Ohio's guest statute which barred recovery to auto guests who failed to show wanton misconduct by the host driver. The court concluded that while sound principles of comity required the application of Ohio's rules of the road, 229 A.2d at 627, Ohio had no interest in the application of its guest statute. The guest statute was designed to prevent collusive lawsuits and a consequent increase in insurance rates. Where insurance rates were set and premiums paid in another state, Ohio's policy could not be advanced by the application of its guest statute. New Jersey's concern for protecting the plaintiff, who was a New Jersey domiciliary, gave it a sufficient interest to warrant the application of New Jersey law.
 
 
 21
 In Pfau v. Trent Aluminum Co., supra, a Connecticut domiciliary sued a New Jersey domiciliary for injuries suffered in an Iowa auto accident. At the time of the accident, both plaintiff and defendnat were resident students at an Iowa college. Since insurance rates were set in New Jersey, the court refused to apply Iowa's guest statute. The court concluded that, although New Jersey did not have an interest in protecting the plaintiff who was a citizen of Connecticut, it might have an interest in enforcing a New Jersey 'hosts duty to his guests.' 263 A.2d at 136.
 
 
 22
 Connecticut on the other hand had a clear interest in protecting its citizens which would allow for the application of its law on host-driver liability. Since the laws of both Connecticut and New Jersey were identical in requiring proof only of ordinary negligence by the host, there was a false conflict. The Pfau court did not decide, therefore, whether defendant's domicile was a sufficient contact upon which to base the application of New Jersey law since the New Jersey result could be reached under Connecticut law.
 
 
 23
 In each case where New Jersey has deemed itself interested there have been close ties between state and the parties.[13] One commentator has concluded:
 
 
 24
 . . . a state is interested in applying its law to a particular case when it can be said that the law was designed to encompass the facts of just such a case. Laws of a state, in turn, are not designed to dispose of all conceivable cases, but only of those having factual contact with the state such that it may be affected by the outcome of the suit. A state is so affected when one of the persons it presumes to protect is a party to the dispute, when misconduct it finds culpable transpired within the state, when its courts are invoked to resolve a dispute which it wished to avoid, or when persons with a financial stake in the litigation are residents of the state. Comment, False Conflicts, 55 Cal.L.R. 74, 80-81 (1967).
 
 
 25
 This article cited with approval in Pfau seems to reflect the views of the New Jersey courts.
 
 APPLICATION OF NEW JERSEY RULES TO THIS CASE
 
 26
 In the present case, Quebec and New Jersey are the only jurisdictions which the parties assert are related.[14] Quebec's factual contacts with this case are numerous. Quebec is the place where the injury occurred, where the drug was prescribed and consumed, where the infant-appellee was born, where he and his parents resided in 1961 and still reside. Richardson-Merrell was in 1961 and is today licensed to do business in Quebec. Richardson-Merrell marketed Kevadon in Quebec upon the authorization of Canadian drug agencies.
 
 
 27
 New Jersey's contacts in turn are less than numerous. 1.7% Of the United States testing of Kevadon was undertaken by New Jersey physicians and appellant's subsidiary, Baker, operates a plant in New Jersey which manufactured the active ingredient of Kevadon.[15] In addition, Richardson-Merrell sells other products and advertises in New Jersey.
 
 
 28
 The district court concluded that manufacture of an active ingredient and 1.7% Of United States testing were contacts sufficient to warrant the application of New Jersey's tolling provision in favor of the infant-plaintiff. Implicit in this conclusion was a finding that, unlike Heavner, New Jersey was sufficiently interested in the Henry case to apply its own law. An analysis of New Jersey's statutes dealing both with the substantive cause of action and the statute of limitation, however, reveals that the district court's finding of interest was erroneous.
 
 
 29
 The negligence-strict liability portion of this cause of action seeks chiefly to compensate plaintiffs. It is clear from Pfau and Heavner, however, that New Jersey does not consider itself interested in nondomiciliary plaintiffs. As with any other balancing test, however, New Jersey's governmental interest approach allows that lack of interest in the plaintiff may be outweighed by other factors. For example, in Heavner v. Uniroyal, Inc., 305 A.2d at 418, the court stated, '. . . there may well be situations involving significant interests of this state where it would be inequitable or unjust' to deny a plaintiff relief despite the fact that most of the operative facts have occurred outside the state.[16] While acknowledging the appeal of plaintiff's claim, the district court record does not necessarily reflect all the options available to persons in the position of the minor plaintiff. The Heavner court cites Marshall v. George M. Brewster & Son, Inc., 37 N.J. 176, 180 A.2d 129 (1962),[17] as an example of a case in which the New Jersey court was confronted with significant New Jersey interests.
 
 
 30
 In Marshall, decedent was killed in Pennsylvania because of the negligence of an association of New Jersey defendants who had engaged in a joint venture in Pennsylvania. Plaintiff-administrator, an Ohio resident, sued the New Jersey defendants in a New Jersey state court. The court applied the Pennsylvania wrongful death statute but refused to apply Pennsylvania's limitation period which would have barred suit. The court in Heavner seems to read Marshall as saying that a state which has very significant contacts with the defendant will be deemed interested.
 
 
 31
 Presumably New Jersey's contacts with a defendant as in Marshall, give the state an interest in enforcing legal duties owed by its citizens and in deterring future misconduct, an interest substantially similar to that adverted to in the false conflict context of Pfau, supra.
 
 
 32
 In the instant case New Jersey's sole contact is with Baker, the local subsidiary of Richardson-Merrell. Although the sheer presence of a defendant might be sufficient to give New Jersey a government interest in cases like Marshall where no other jurisdiction is likely to have greater contacts with the defendant, such a rationale does not apply to a corporation which operated in some fashion in all fifty states and has more substantial activity in other places. The court in Heavner seems to question the view that defendant's presence alone, which in Heavner was combined with New Jersey incorporation, can be sufficient to give New Jersey courts an interest.[18]
 
 
 33
 The manufacturing activity of Richardson-Merrell's subsidiary in this case was similarly insufficient to give New Jersey an interest, even assuming that the state courts would posit an interest in deterring misconduct because of defective manufacture within the state.
 
 
 34
 Although plaintiff's complaint sounds in negligence, strict liability and warranty, defendant's allegedly improper conduct cannot be traced to manufacturing activities in New Jersey.[19] Plaintiff alleges throughout that his mother did not ingest a 'bad batch' of thalidomide which failed to conform to specification because of a defect developing during manufacture in New Jersey. Such an allegation would have been founded on tortious conduct in the forum state. Instead plaintiff alleges that the drug was inherently defective and that its defects were analogous to defects in design.[20] It is undisputed that New Jersey's contacts with the drug began long after the design stages and that the raw thalidomide manufactured in New Jersey did not deviate from the specifications set by the German developer and the Ohio laboratories of defendant Richardson-Merrell. Thus, any possible New Jersey policy of enforcing a duty, owed because of tortious misconduct in New Jersey, is inapplicable; the plaintiff has specifically stated that there is nothing improper about the way the drug was manufactured.
 
 
 35
 Plaintiff's complaint also charges that the drug was insufficiently tested. The district court seems to have concluded that since 1.7% Of the United States testing had been conducted in New Jersey, New Jersey was an interested forum. This contact is even more tenuous than the manufacturing contact, however. There is no allegation that the testing in New Jersey was improperly conducted. Any charge of insufficient testing would seem to relate to the place where testing decisions were mede, Richardson-Merrell's National Laboratories in Ohio. New Jersey was merely one of forty-one states in which clinical testing of the drug was conducted.[21] New Jersey testing simply did not give the State an interest in applying its product liability law to these plaintiffs.
 
 
 36
 Absent a finding that New Jersey substantive law applies, Heavner requires borrowing of the foreign limitation period.
 
 
 37
 Although the district court did not investigate the policy behind New Jersey's tolling provision, it is clear that the policy behind that statute also would not be fostered by application to these plaintiffs. The New Jersey tolling provisions were enacted to protect infants during minority. Higgins v. Schneider, 61 N.J.Super. 36, 160 A.2d 165 (1960). There are no New Jersey cases construing the scope of this precise statute. A panel of this court, however, has held that the New Jersey statute which tolls for defendants absent from the state, N.J.S.A. 2A:14-22, should be limited to resident, plaintiffs. Zelson v. Thomforde, 428 F.2d 1360 (3d Cir., 1970). The Zelson court stated: '. . . it is fair to assume that in enacting the tolling statute the Legislature was intent in protecting New Jersey residents who had New Jersey claims against nonresident debtors from having to go to foreign jurisdictions to enforce their claims.' 428 F.2d at 1362.
 
 
 38
 Faced with a similar tolling statute for minors, we feel that a New Jersey court would limit its applicability to local infants in whom the New Jersey legislature has an interest. The state clearly did not intend to extend tolling protection to all plaintiffs from distant locales whose legislature had failed to afford similar protection.[22]
 
 
 39
 We conclude that a New Jersey court, confronted with these facts would deem itself a disinterested forum and apply the law of Quebec to dismiss this suit as timebarred. To apply New Jersey's tolling provision here would violate the Heavner dictate that forum shopping should be discouraged by litigants with slender ties to New Jersey.
 
 
 40
 Although the New Jersey Supreme Court in Heavner did not feel obligated to do more than point out North Carolina's interest in the facts of that case, we deem it helpful to prove that Quebec's interest in this case is overwhelming.
 
 
 41
 The trial court properly concluded that Quebec CC Article 2262, supra n. 3, was directed toward 'protecting Quebec citizens and the Quebec courts from excessive and tardy litigation.' 366 F.Supp. 1202.
 
 
 42
 The trial court then concluded that because Quebec was not the forum court and because defendant was not a Quebec corporation, the policy behind the Quebec limitation would not be fostered by application in this case. 366 F.Supp. at 1202. Although Richardson-Merrell was not a Quebec corporation, it was at all times licensed to do business in Quebec. The protection afforded by the Quebec limitation was aimed at defendants like Richardson-Merrell acting within the territorial limits of Canada.[23] Thus in refusing to apply the statute on these facts, the district court did in fact frustrate a policy of Quebec.
 
 
 43
 In addition, it is Quebec which has the chief concern with these plaintiffs, who may become public charges to the Quebec government if they are not compensated.[24] In the same vein, much of the allegedly tortious conduct of defendants, including the marketing and sale of the drug, any misrepresentations made to secure Canadian approval, and any violation of the Canadian Federal Foods, Drug and Cosmetics Act, occurred in Canada. Surely Canada has a governmental interest in deterring future misconduct within its borders and in punishing past misconduct. That Quebec has chosen to subordinate interests of deterrence, punishment and compensation to a concern for speedy litigation should have no bearing on this court's finding that Quebec's interest in this matter is paramount.
 
 
 44
 There are additional and more serious problems with contending that anything but Canadian law should apply to this case. In Pfau and Mellk, the New Jersey courts conceded without hesitation that the state where the auto accident occurred had a paramount interest in applying its 'rules of the road.' To judge conduct occurring in another state by New Jersey's highway rules would violate fundamental principles of fairness and comity. By analogy, New Jersey would not presume to tell a drug seller that its activity in Canada should be judged by the rules of New Jersey or for that matter by the United States Food and Drug Law.[25] With respect to those portions of plaintiff's complaint alleging conduct occurring entirely within Canada, therefore, New Jersey would refuse to apply its substantive law. Canada clearly had the paramount interest in determining what testing and supportive data it would require before approving drugs for sale in Canada to Canadian citizens. Sound principles of comity direct that any misrepresentation to the Canadian drug authorities, or any inadequacy of labels be judged by that nation's laws. Once this court finds that the substantive law of another jurisdiction must be applied, Heavner, of course, directs that we borrow that jurisdiction's limitation period.
 
 III.
 
 45
 The trial court found that Heavner was distinguishable because in that case there were no contacts to support a government interest whereas in this case there were contacts which resulted in forum interest.
 
 
 46
 The contact of manufacture is not determinative in a products liability suit decided under New Jersey's governmental interest analysis. Although it will be relevant in most cases where injury has resulted from a defect of manufacture, each case must be examined on its own facts. On the facts of this case, plaintiff has never alleged that the defect arose during manufacture. As such, New Jersey has no interest in having its law applied to this case. Like the court in Heavner, we conclude:
 
 
 47
 We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Fersey will hold the suit barred. 305 A.2d at 418.
 
 
 48
 The judgment of the district court will, therefore, be reversed and the suit dismissed as timebarred under the applicable Quebec statute of limitations.
 
 
 
 [1]
 The parents of the infant-plaintiff joined in the original suit but their action was dismissed as timebarred by the district court under either the Quebec or New Jersey limitation. 366 F.Supp. at 1195 n. 6
 
 
 [2]
 Plaintiff named Merrell-National Laboratories, a division of Richardson-Merrell, Inc., located in Cincinnati, Ohio, as a second defendant. Since it is not a separate legal entity, the trial court treated the suit as one against a single defendant
 
 
 [3]
 Civil Code of the Province of Quebec (Quebec C.C.) (1972) Article 2262 provides:
 The following actions are prescribed by one year:
 . . . .ing
 
 
 [2]
 For bodily injuries, saving the speical provisions contained in Article 1056 and cases regulated by special laws (these special provisions are not relevant to the case at bar)
 
 
 [4]
 New Jersey's two year statute of limitation, N.J.S.A. 2A:14-2 provides:
 Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
 New Jersey's tolling statute, N.J.S.A. 2A:14-21 provides:
 If any person entitled to any of the actions or proceedings specified in sections 2A:14-1 to 2A:14-8 or sections 2A:14-16 to 2A:14-20 of this title or to a right or title of entry under section 2A:14-6 of this title is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind.
 
 
 [5]
 Since this case comes before us on a motion for summary judgment, the facts must be viewed in the light most favorable to the plaintiff, who opposes the motion. Rule 56 F.R.Civ.P. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)
 
 
 [6]
 Denis Henry was born without ears and consequently is deaf, with left facial paralysis, bilateral cranial nerve palsy, micrognathia and severe facial abnormalities. As a result of physical deformities, his psychic and educational development has been impaired
 
 
 [7]
 The sole factual dispute in the case revolves around the date on which Merrell's subsidiary began production of the active ingredient in New Jersey. Appellant drug company contends that Mrs. Henry could not have consumed Kevadon, whose active ingredient originated in New Jersey since it did not begin manufacture until after the date of her ingestion. We will assume on this summary judgment motion, however, that appellee-plaintiff's counterclaim is correct and that Mrs. Henry did in fact consume Kevadon whose ingredient originated in New Jersey
 
 
 [8]
 In stating its approach to governmental interest, the New Jersey courts rely on earlier cases from California, Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 p.2d 727 (1967), and New York, Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (Ct.App.1966); Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (Ct.App.1969). A series of commentaries is also deemed instructive. Currie, Notes on Methods and Objectives in The Conflict of Laws, 1959 Duke L.J. 171, Kay, Comment on Reich v. Purcell, 15 U.C.L.A. L.Rev. 584 (1968), Currie, The Disinterested Third State, 28 Law & Contemp. Prob. 754 (1963). See also Horowitz, The Law of Choice of Law in California, 21 U.C.L.A. L.Rev. (1974). Comment, Statute of the Locus Applied to Foreign Cause of Action, 27 Rutgers Law Rev. 481 (1974), Note, Conflicts of Law-- Statute of Limitations-- Foreign Jurisdiction's General Personal Injury Statute of Limitation Bars a Non-Resident's Products Liability Action, 5 Seton Hall L.Rev. 342 (1974)
 
 
 [9]
 Appellant's allegations that the substantive nature of the Quebec limitation require this court to choose it in preference to New Jersey's period of limitations must fail in light of Heavner. That case eschews all mechanistic rules. The decision to borrow or not must be made irrespective of whether the foreign limitation period is considered substantive or procedural
 See Busik v. Levine, 63 N.J. 351, 307 A.2d 571, 577-578 (1973); Breslin v. Liberty Mutual Insurance Company, 125 N.J.Super. 320, 310 A.2d 527, 533 (1973) for more recent statements of New Jersey's requirement to borrow a foreign limitation period on a foreign based cause of action. These cases are otherwise irrelevant to the present issue.
 
 
 [10]
 The district court concluded that it would be premature to decide whether Quebec's substantive law would govern 366 F.Supp. at 1200 n.12. Instead that court performed a limited governmental analysis of the interests behind the limitation periods of Quebec and New Jersey. To consider the limitation period in isolation, however, defeats the very purpose of Heavner which seeks to discourage forum shopping. The foreign state's policy of protecting the court and defendant from tardy litigation will never seem relevant to a local court dealing with a defendant not domiciled in the foreign jurisdiction
 
 
 [11]
 The Heavner court also implied that a proper case for the exercise of forum non conveniens had been presented. The court cited two earlier New Jersey cases. In Gore v. United States Steel Corp., 15 N.J. 301, 104 A.2d 670 (1954), cert. denied, 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954), the New Jersey courts refused to consider a case where an Alabaman injured in that state sued a defendant incorporated in New Jersey in a New Jersey court
 Similarly, in Semanishin v. Metropolitan Life Insurance Co., 46 N.J. 531, 218 A.2d 401 (1966), the court dismissed a suit by European nationals against a New Jersey corporation. The plaintiffs were beneficiaries on insurance policies issued in New York by a company whose main offices were in New York.
 Since none of the parties raised the issue of forum non conveniens, we will not consider it. It is interesting to note, however, that the court in Semanishin deemed relevant the fact that defendants' insurance company was licensed to do business in New York where most of the operative facts occurred.
 
 
 [12]
 The only New Jersey case we have found which alludes to such a policy is Pfau, supra. In Hurtado v. Superior Court of Sacramento County, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974), relied on by plaintiff-appellee, the court enunciates a purpose in tort actions to deter future misconduct. Although this California case is not controlling on a court governed by New Jersey law, it is persuasive in light of its logic and New Jersey's earlier reliance on California decisions in formulating its interest approach
 
 
 [13]
 In Mellk, and Mullane v. Stavola, 101 N.J. Super. 184, 243 A.2d 842 (1968), both parties were New Jersey residents. In Pfau, New Jersey did not conclude that it was an interested forum-- plaintiff was a non-resident-- but the court implied that the place of defendant's residence might be interested. In Rose v. Port of New York Authority, 61 N.J. 129, 293 A.2d 371 (1972) plaintiff was a New Jersey resident and defendant was a New York-New Jersey agency. In each of these cases, the court applies New Jersey law despite the fact that misconduct occurred elsewhere because of New Jersey's ties to the parties
 In the forum non conveniens cases, Gore and Semanishin, cited supra n. 11, the court refused to hear cases where plaintiffs resided elsewhere, the misconduct occurred elsewhere and defendant's only ties to the jurisdiction were unrelated to the cause of action. Accord Heavner, supra.
 The distinction between these cases clarifies what New Jersey considers to be its interest.
 
 
 [14]
 The parties failed to allege that any other jurisdiction was interested in this case, although they might have proposed an interest in Ohio, where the Merrell-National Laboratories are located or in New York where the corporate headquarters of defendant are located. The parties having failed to plead the law of any other jurisdiction, it is not incumbent on this court to do so. Leflar, Choice Influencing Considerations in Conflicts Law, 41 N.Y.L.Rev. 267, 303-304 (1966), Leary v. Gledhill, 8 N.J. 260, 269-270, 84 A.2d 725, 729 730 (1951)
 
 
 [15]
 After the district court hearing on the summary judgment motion, plaintiffs discovered yet another 'contact' to New Jersey. They discovered that a New Jersey company, acting as an independent contractor, had packed certain amounts of Kevadon tablets into cellophane strips. That this 'contact' was even mentioned evidences appellees' misunderstanding of New Jersey's governmental interest analysis. We reiterate with the New Jersey court in Mullane v. Stavola, supra, that a plaintiff does not show interest by piling up quantities of contacts. Only where a contact gives the state a factual basis to apply its governmental policy is it deemed relevant to show interest
 
 
 [16]
 The district court relied on this language, at least in part, holding that it would be unjust to dismiss the plaintiff's suit. 366 F.Supp. at 1200. This Heavner language, however, can only apply where New Jersey has 'significant interests' which it does not have in the instant case. See p. 36, infra, of this opinion
 
 
 [17]
 Marshall v. George M. Brewster & Son, Inc., was decided under the pre-Mellk lex loci delicitus rules
 In the same context, the Heavner court alluded to Air Products and Chemicals, Inc. v. Fairbanks Morse, Inc., 58 Wis.2d 193, 206 N.W.2d 414 (1973). Contrary to the district court's treatment of Air Products in the instant case, however, the Heavner court did not approve the rationale of Air Products. The Heavner court merely stated that Air Products had come to its attention. Even if Air Products had been adopted by the New Jersey Supreme Court, it is of little value to appellee's position. In Air Products, the Wisconsin court applied its own limitation in a case where the parties stipulated that Pennsylvania law governed the merits. In that case, Pennsylvania plaintiffs sued defendant for defects arising during manufacture of a machine in Wisconsin. The court there did not apply a governmental interest analysis but instead relied on Leflar's Choice Influencing Considerations, supra n. 14. The case is not helpful to plaintiff appellee because the defect there arose during manufacture whereas here the manufacture was unrelated to any defect, infra n. 20 and text accompanying.
 
 
 [18]
 The district court in Henry seems to have confused the contacts necessary to achieve in personam jurisdiction over the defendant with those necessary to trigger New Jersey's governmental interest. The contacts required are not identical. In a lengthy article cited with approval by the New Jersey courts, Former Justice Traynor of the California Supreme Court explored the boundary lines between the doctrines of forum non conveniens, in personam jurisdiction and governmental interest. Traynor, Is This Conflict Really Necessary? 37 Tex.L.R. 657 (1957)
 Activity by the Baker subsidiary in New Jersey may have been sufficient voluntary association with New Jersey for that state to assert in personam jurisdiction over Richardson-Merrell under the principles of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See also Seymour v. Parke, Davis & Company, 423 F.2d 584 (1st Cir., 1970).
 New Jersey's governmental interest, however, seems to require a higher quality of contact than the minimum contacts required for jurisdiction. Whereas in personam jurisdiction may properly be exercised over a defendant who is merely 'caught' in the jurisdiction, governmental interest requires a nexus between the contact and some valid governmental policy.
 
 
 [19]
 The district court apparently concluded that the plaintiff had alleged improper conduct in New Jersey. 366 F.Supp. at 1200
 
 
 [20]
 At the hearing on the motion for summary judgment, counsel for the plaintiff specifically stated:
 . . . we are not talking about a contaminated batch, your Honor. We are not talking about one batch that was bad. We are talking about the entire thalidomide, whether it was made in Germany or whether it was made by Baker. It doesn't make any difference. It is still Richardson-Merrell's drug.
 In order to get approval of that drug to be used in the market they had to tack on the German experience. This is like a negligent design.
 (n.t. at 46 reproduced at page 92 of the Appendix.)
 
 
 [21]
 Exhibit 6-3 reproduced at page 303 of the appendix indicates that Forty-one states took part in the testing and that in nineteen of the forty-one, greater numbers of physicians participated than in New Jersey
 
 
 [22]
 Certain commentators have suggested that to extend state protective policies to persons with whom the state has no concern amounts to a denial of due process and violates the full faith and credit clause of the United States Constitution. Currie & Schreter, Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities, 69 Yale L.J. 1323, 1324 (1960); Comment, False Conflicts, 55 Cal.L.R. 74, 87 (1967)
 We merely mention but do not comment on this theory.
 
 
 [23]
 In Hurtado, supra n. 12, a California case relied on by appellee, the court states that the protection afforded by a statute of limitation extends not only to defendants incorporated in the state but also to those doing business in the state. In describing the holding of an earlier California case, Ryan v. Clark Equipment, 268 Cal.App.2d 679, 74 Cal.Rptr. 329 (1969), the Hurtado court states, 'the defendant manufacturing corporation, while not incorporated in Oregon, was lawfully doing business there and Oregon had an interest extending to such a resident business entity in applying that state's limitation of damages in order to protect such defendant's financial security.' 11 Cal.3d at 585, 114 Cal.Rptr. at 113, 522 P.2d at 673. We perceive that New Jersey would recognize a state's interest in protecting a corporation doing business within the state. In Semanishin, supra n. 11, New Jersey recognized that New York, where all the operative facts occurred and where defendant did business, had a greater interest than New Jersey, the place of defendant's incorporation
 In concluding that the Quebec statute did not protect companies like defendant, the district court relied on Dindo v. Whitney, 429 F.2d 25 (1st Cir., 1970). The court in Dindo construed the Quebec limitation in a factual contest involving a very slight connection to Quebec. An auto accident involving non-residents clearly did not give Quebec an interest in applying its one year limitation. In the instant case, however, Quebec's relationship to the case could hardly be dismissed as fortuitous. As such, the rationale of Dindo is less applicable.
 
 
 [24]
 The right to sue for personal injuries is incorporated in Article 1053 of the Civil Code of the Province of Quebec which provides:
 Every person capable of discerning right from wrong is responsible for the damage caused by his fault to another, whether by positive act, imprudence, neglect or want of skill.
 This provision has been interpreted by the Quebec courts to include the right of a minor to bring a tort action for prenatal injuries. Montreal Tramways Co. v. Leveille (1933) S.C.R. 456.
 
 
 [25]
 A long series of Supreme Court cases has held that before a jurisdiction can seek extraterritorial application of its laws, it must have a substantial interest in the party whom the statute seeks to protect. For example, in Watson v. Employers Liability Assurance Corporation, Ltd., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), the Court held a Louisiana statute which varied contract rights created outside of Louisiana between parties outside of Louisiana to be valid under the due process clause because Louisiana had an overwhelming interest in protection of its own citizens. 348 U.S. at 72, 75 S.Ct. at 170. Accord, Clay v. Sun Ins. Office, Ltd., 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1963), and Crider v. Zurich Ins. Co., 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1964)
 Where no such overwhelming interest in the parties is present, however, the Supreme Court has refused to allow the extraterritorial application of a local statute. In Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1952), the Supreme Court overturned a trial court's application of the Jones Act to a Danish seaman injured in Cuban waters who had signed an employment contract in an American port. Accord, Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1929).
 In the instant case there are due process problems in the extraterritorial application of American drug regulations to the Canadian activities of a drug seller who by coincidence is also subject to regulation by the American Food and Drug Administration.