LOUIS J. PACK and S. SAMUEL ARSHT, as Executors of the Estate of Manuel N. Pack, deceased, Appellants, v. BEECH AIRCRAFT CORPORATION, Appellee.

414

(*May* 24, 1957.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*S. Samuel Arsht* and *Harvey S. Kronfeld* for appellants.

*Edmund N. Carpenter, II*, for appellee.

Supreme Court of the State of Delaware, No. 52, 1956.

SOUTHERLAND, C. J.:

Manuel N. Pack, plaintiffs' testator, was an airplane pilot. He was a resident of Delaware. On or about June 13, 1953, he was killed in an airplane crash in New Jersey. He had been piloting an airplane manufactured and designed by the defendant aircraft corporation. On October 25, 1955, his executors sued in Delaware to recover damages for his death, alleging that the defendant's airplane was defective in design and manufacture. The action was begun more than two years but less than three years after the date of death. It is founded upon the New Jersey wrongful death statute. That statute requires that actions brought under it "shall be commenced within 2 years after the death of the decedent, and not thereafter". *N. J. S. A.* 2A:31-3.

The Delaware wrongful death statute contains no special time limitation. The general three-year statute of limitations applies to actions brought under it. 10 *Del. C.* § 8106; *Homiewicz v. Orlowski*, 34 *Del.* 66, 143 *A.* 250.

The question presented is one of conflict of laws. Which time limitation governs this case? The court below held that the New Jersey act controlled and dismissed the suit. Plaintiffs appealed.

The basic holding of the opinion below is that the two-year provision of the New Jersey statute is a limitation of the liability created by the statute—a condition of the right to recover—and upon the expiration of the two-year period the cause of action is extinguished. In so holding the court below merely followed the decisions of the Supreme Court of New Jersey in *Lapsley v. Public Service Corporation*, 75 *N. J. L.* 266, 68 *A.* 1113, and *Bretthauer v. Jacobson*, 79 *N. J. L.* 223, 75 *A.* 560, 562. In the *Bretthauer* case the court said:

"* * * But this provision of the death act is not an ordinary statute of limitations. It operates, not only as a limitation of the remedy given the plaintiffs, but also as a limitation of the liability which it creates against defendants. *Lapsley v. Public Service Corporation,* 75 *N. J. L.* 266, 68 *A.* 1113. Consequently, when the wrongful act which is the subject-matter of the present litigation was committed by the defendants' employe, the defendants became legally liable for a period of 12 calendar months to compensate the next of kin of the deceased for the pecuniary injury resulting to them from his death, and were exempt from such liability at the expiration of that period."

▆▆ Under well-settled principles of conflict of laws we must accept the construction placed upon the statute by the New Jersey courts. The place of bodily injury determines the place of wrong, *i.e.,* the tort (*Restatement,* "Conflict of Laws", §377); and the law of the place of wrong governs the right of action for death (*Restatement,* "Conflict of Laws", § 391). Moreover, limitations of time incorporated in wrongful death statutes are almost universally held to constitute "built-in" conditions of the right to recover; and accordingly it is said:

"A limit of time for bringing suit contained in a statute giving damage for death is binding everywhere, and no state will allow suit after the time has elapsed."

2 *Beale,* Conflict of Laws, § 397.1

The *Restatement* is to the same effect. § 397; § 605.

▆▆ It is elementary that an event that creates no cause of action in a foreign state cannot be made the basis of an action in the state of the forum. 2 *Beale,* Conflict of Laws, § 378.4. Under the New Jersey statute, as construed by the New Jersey courts, there existed no cause of action in the plaintiffs when this suit was filed. Paragraph 1 of the statute had created a cause of action, but paragraph 3 had extinguished it. We cannot enforce paragraph 1 of the section and disregard the other paragraphs. If we disregard the New Jersey law in respect of the time condi-

tion (held by its courts to be a matter of substantive right), may we disregard it in respect of the provisions specifying the plaintiffs entitled to sue (*N. J. S. A.* 2A:31-2), or the provision specifying the persons entitled to the recovery (*N. J. S. A.* 2A:31-4)? We must enforce the statute as we find it, and as construed by the New Jersey courts.

The rule has been recognized in Delaware, at least by way of dictum. *White v. Govatos,* 40 *Del.* 349, 10 *A.* 2d 524. It has been applied in New York in a suit brought on the New Jersey statute. *Schwertfeger v. Scandinavian-American Line,* 186 *App. Div.* 89, 174 *N. Y. S.* 147, affirmed 226 *N. Y.* 696, 123 *N. E.* 888.

Although plaintiffs criticize the soundness of the "limitation of liability" theory, their case really comes to this: that the Delaware "borrowing" or "comity" statute relating to foreign causes of action changes the settled principle of conflict of laws above referred to (2 *Beale,* § 397.1, *supra*) and makes the Delaware three-year statute applicable to the case.

Our borrowing statute is found in 10 *Del. C.* § 8120. It reads:

"Where a cause of action arises outside of this State, an action can not be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply."

This statute is an example of the modern trend toward modification of the common law rule that the matter of limitation of actions is controlled by the law of the forum. See 11 *Am. Jur.,* "Conflict of Laws", § 197; *Restatement,* "Conflict of Laws", § 604b. It is, as defendant's counsel correctly says, an act to prevent "forum-shopping". If a non-resident chooses to

bring a foreign cause of action into Delaware for enforcement, he must bring the foreign statute of limitations along with him if the foreign statute prescribes a shorter time than the domestic statute. Our statute does not apply to a resident of this State suing on a foreign cause of action, provided he was a resident when the cause of action arose. As to such a resident the common law rule that the *lex fori* governs the matter of limitation of actions is left in full force.

On its face, therefore, the general purpose of the statute is to shorten the period of limitation applicable to actions arising in foreign jurisdictions if the foreign statute specifies a shorter period; with a proviso, however, that the rights of a certain class of residents shall be unaffected by the change. Such, we think, is the clear and obvious meaning of the statute.

Plaintiffs, however, insist that the proper construction of the statute is this:

The first sentence of the statute, they say, admittedly changes the common law, *i.e.*, it borrows the foreign statute if the latter provides a limitation shorter than that of the law of the forum. But, they say, the second sentence likewise changes the common law; it is designed to make the *lex fori* applicable to *all* cases of foreign causes of action brought by residents of Delaware (if they were such residents at the time the causes arose), including even those actions which by the law of the foreign forum involve statutes with a "built-in" condition affecting the existence of the right as well as the remedy.

Now, if the plaintiffs are right, the intent of the second sentence of our borrowing statute is to *extend* the period of limitation under the common-law conflicts rule in cases such as the instant one.

Such an idea is foreign to the general purpose of "borrowing" statutes in the field of limitation of actions. These statutes are designed to prevent shopping for the most favorable forum, and hence to shorten the time limit—not to extend it. "Borrow-

ing statutes provide only a shorter time limit than the local period, which is still applicable to bar an action not barred by the borrowed foreign limitation." 63 *Harv. L. Rev.*, 1177, "Statutes of Limitations", at page 1263.

But there is a more serious objection to plaintiffs' construction. If plaintiffs are right, it was the legislative intent, through the medium of a borrowing statute dealing with limitations of actions, to import an innovation into our substantive law. The elementary and settled rules in the field of conflict of laws, above discussed, would be changed. We cannot believe that by a mere proviso to a borrowing statute, dealing only with ordinary statutes of limitations, the legislature intended any such radical change.

But plaintiffs insist that this second sentence is unique in a borrowing statute and has no real meaning unless it be construed to change the common law rule. The statute is not unique; as originally adopted, it was almost a verbatim copy of Section 13 of the New York Practice Act. The second sentence of this section has been construed by the New York courts as not extending the shorter limitation period of a foreign statute if that period is a "built-in" condition that extinguishes the right at the expiration of the statutory period. *Weiss v. Baviello*, 203 *Misc.* 1031, 117 *N. Y. S.* 2d 891, *Id., Sup.*, 133 *N. Y. S.* 2d 344, affirmed 286 *App. Div.* 1024, 146 *N. Y. S.* 2d 674; *In re Tonkonogoff's Estate*, 177 *Misc.* 1015, 32 *N. Y. S.* 2d 661. These cases are authority against plaintiff's contention. It is true that they contain little discussion of the scope and purpose of Section 13; but it seems probable that the New York courts thought it highly unreasonable, as we do, to infer an intention to change a settled—a universal—rule in the field of conflict of laws by inserting a special exception for the benefit of residents in a borrowing statute dealing with ordinary statutes of limitations.

Plaintiffs argue that the language of the Delaware act— "time limited * * * for bringing an action"—is broad enough to include a "built-in" condition, which (say plaintiffs) certainly

limits the time for bringing the action. They point to the hold-ing of the Superior Court in *White v. Govatos, supra,* that a "built-in" condition is intrinsically a "time limitation". That case does not help plaintiffs. It concerns a foreign statute relating to stockholders' liability to assessment that contained a six-year "built-in" condition. Suit was brought in Delaware. Such an ac-tion is barred in Delaware after three years. The court recog-nized that the general rule is that the expiration of the time limited in a "built-in" condition extinguishes the right to which it attaches. See 40 *Del.* 351, 10 *A.* 2d 525. But the court also held a "built-in" condition affects the remedy as well as the right, and that the action was barred by the *lex fori.* Plaintiff says (1) that this holding is inconsistent with the "built-in" condition theory that the time limitation in such a condition is one of substance; and (2) that therefore we should adopt the rule (contrary, of course, to the New Jersey holdings) that the condition is one affecting the remedy only, and apply the *lex fori* to this case.

With the first contention we agree. With deference to high authority supporting the *Govatos* case, we cannot understand how a "built-in" time limitation in a death statute can be a matter of substance for one purpose and a matter of remedy only for another purpose. If a "built-in" condition is enough of a matter of substance to destroy the right, why is it not enough of a matter of substance to preserve it? We think such a result quite illogical, and there is much judicial authority and opinion to the contrary. See, for example, the dissenting opinion in *Wells v. Simonds Abrasive Co.,* 345 *U. S.* 514, 73 *S. Ct.* 856, 859-862, 97 *L. Ed.* 1211, involving a suit in Pennsylvania on an Alabama statute. Justice Jackson says:

"We think that the better view of the case before us would be that it is Alabama law which giveth and only Alabama law that taketh away."

But plaintiffs' second contention does not follow. If under New Jersey law the cause of action is extinguished there is no basis for saying that the condition in the New Jersey statute is

one affecting the remedy only, unless we create a new conflict-of-laws rule, a suggestion already considered and rejected.

Plaintiffs make certain arguments based on various accepted rules of statutory construction. We have noted them but they do not help plaintiffs here. In that connection plaintiffs say that the statute should be construed as a whole and that so construed the first sentence of the statute relates only to non-residents. This is clearly unsound. The first sentence is in general terms. The second sentence (which was originally an exception, see 46 *Laws,* c. 254) carves out an exception for certain residents only.

Plaintiffs find what they term "analogous authority" in the decision in State of Maryland, to *Use of Burkhardt v. United States,* 4 *Cir.,* 165 *F.* 2d 869, 873, 1 *A. L. R.* 2d 213. That is a suit under the Federal Tort Claims Act, 28 *U. S. C. A.* § 2671 *et seq.,* for wrongful death occurring in Maryland. The Fourth Circuit Court of Appeals holds that the limitation prescribed by the Federal Act controls and not that prescribed by the Maryland law, although the limitation on the Maryland statute is a "built-in" condition. The decision does not aid plaintiffs. It is unnecessary to review in detail Judge Parker's thorough analysis of the Federal act and of its legislative history. The court holds that these considerations compel the conclusion that the intent of Congress was that the State law is to be followed with respect to the cause of action created but not with respect to the time limitation for suit. Indeed, the case appears to hold that it is the Federal act that *creates* the liability, the Maryland act being merely borrowed or incorporated to determine its nature and extent.

Plaintiffs emphasize the following language from the opinion:

"And we think it makes no difference that the limitation applicable to the action for death by wrongful act is held under state law to be a condition on the exercise of the right rather than a limitation on the remedy. This holding is based upon the

narrow ground that the limitation is imposed by the statute creating the cause of action and is, to say the best of it, technical and legalistic reasoning, which is not followed in all the states."

We are in entire accord with Judge Parker's characterization of the "built-in" condition rule. The ordinary statute of limitation says that "no action shall be brought" after a specified time. The death actions usually provide that the action shall be brought within a specified time. The New Jersey Act adds the words "and not thereafter". So did the Pennsylvania Statute of 1855, 12 *P. S.* § 1603, (quoted in *The Harrisburg,* 119 *U. S.* 199, 7 *S. Ct.* 140, 30 *L. Ed.* 358). Why should such a difference in language lead to such an important difference in substantive result? One of the early cases announcing the rule is *The Harrisburg, supra,* in which Chief Justice Waite adopted it without citation of authority, apparently on the theory that a statutory action should, in respect to the application of the principles of conflict of laws to limitation of actions, be subject to a stricter rule than common-law actions. Today this concept seems to have an archaic flavor. And the rule has not escaped criticism in academic circles on the ground that it has led to unsatisfactory results. See 63 *Harv. L. Rev.,* article cited, p. 1188. That is certainly true. Thus the courts are not in agreement as to whether a "built-in" condition may be tolled because of absence of the defendant, fraud, or other reason that would toll an ordinary statute of limitations. 63 *Harv. L. Rev.* 1234-5. And *cf. Scarborough v. Atlantic Coast Line R. Co.,* 4 *Cir.,* 178 *F.* 2d 253, 15 *A. L. R.* 2d 491, holding that fraud will toll a substantive time limitation.

And see the case of *Wright v. Kroydon Co.,* 9 *N. J. Misc.* 287, 154 *A.* 195, which holds that the New Jersey "built-in" condition will be applied as an ordinary statute of limitations in a suit on a Michigan death statute that contained no such limitation. This holding, like the holding in the *Govatos* case, seems to us inconsistent with the rule that a "built-in" condition is not an ordinary statute of limitations. Perhaps it expresses the idea

that, regardless of the nature of the limitation in either forum, the shorter limitation is preferred.

But with the soundness of the rule and the inconsistency of the results to which it has led we are not here concerned. We must enforce the New Jersey law as we find it. We cannot change the law, as in effect plaintiffs would have us do, because we might disagree with the New Jersey holding if we had to construe a similar Delaware statute, or because of some vague considerations of public policy in the field of conflict of laws.

Plaintiff cites a number of cases dealing with limitations of time arising out of questions of probate statutes, survival statutes, venue statutes or rules, and the like. None of these cases is apposite. Nor are the decisions applying in special circumstances the rule of damages of the forum rather than that of the foreign state.

Finally, plaintiffs refer to the decisions discussing the question whether under a borrowing statute a cause of action is barred by the statute of limitations of the State where the cause of action arose if the defendant could not have been effectively sued in that state. See 11 *Am. Jur.* "Conflict of Laws", § 197, p. 513. These cases concern borrowing statutes dealing with ordinary statutes of limitations. See cases collected in 76 *A. L. R.* 211 *ff.;* annotation. As we have held, our borrowing statute does not touch the matter. If it applied to the case, plaintiffs could clearly recover; but it does not apply, because of the New Jersey law that before plaintiffs' suit was filed their right of action was gone.

We have examined all the arguments (and they are many and diverse) advanced by plaintiffs in an effort to escape the application of a fundamental rule in the field of conflict of laws. We find ourselves in sympathy with plaintiffs' position; but we cannot do violence to the law to give them relief.

The judgment below is affirmed.