# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHC INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0353-KSJM |
| | ) | |
| FIRSTSUN CAPITAL BANCORP, | ) | |
| WILLIAM D. SANDERS, WILLIAM | ) | |
| P. SANDERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 13, 2019
Date Decided: March 23, 2020

John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Michael C. Manning, Jeffrey J. Goulder, Stefan M. Palys, Christy M. Milliken, STINSON LEONARD STREET LLP, Phoenix, Arizona; *Counsel for Plaintiff CHC Investments, LLC.*

Jon E. Abramczyk, William M. Lafferty, Sabrina M. Hendershot, MORRIS, NICHOLS, ARSHT, & TUNNELL LLP, Wilmington, Delaware; Lawrence Portnoy, Julia Kiechel, M. Nicholas Sage, Caroline Stern, DAVIS POLK & WARDWELL LLP, New York, New York; *Counsel for Defendants FirstSun Capital Bancorp, William D. Sanders, and William P. Sanders.*

**McCORMICK, V.C.**

Over three years before commencing this litigation, the plaintiff invested $25 million into a predecessor of the entity defendant. The plaintiff made this investment after a weekend of informational meetings with two company officers, the individual defendants. In those meetings, the individual defendants represented that the company planned to use the investment to execute a new business model in the residential mortgage market. The plan did not pan out, and the plaintiff now claims it was defrauded. The plaintiff alleges that the defendants failed to disclose the impact of federal banking regulations on the new business model. The plaintiff further alleges that the defendants issued partial and misleading disclosures related to then-pending litigation against senior-level managers who would have been key to the execution of the new business model. The defendants raised a host of arguments in moving to dismiss the complaint. One does the job. Delaware's borrowing statute requires the Court to apply Delaware's three-year statute of limitations, and the plaintiff's claims are time-barred as a result. The defendants' motion to dismiss is granted in its entirety.

I.      **FACTUAL BACKGROUND**

The facts are taken from the Verified Second Amended Complaint[1] and documents it incorporates by reference.

---

[1] C.A. No. 2018-0353-KSJM, Docket ("Dkt.") 48, Verified Sec. Am. Compl. ("Sec. Am. Compl.").

Plaintiff CHC Investments, LLC ("Plaintiff" or "CHC") is a Delaware limited liability company whose sole member is Christopher Cole. Strategic Growth Bancorp, Incorporated ("SG Bancorp") is a Delaware corporation registered as a bank holding company. Defendant William D. Sanders is SG Bancorp's Chairman and CEO. His son, Defendant William P. Sanders, served as a director and officer of SG Bancorp.

Cole invested in SG Bancorp's predecessor entity in 2010.[2] In February 2014, the Sanders invited Cole to El Paso, Texas for a presentation about another investment opportunity in SG Bancorp. Cole met with the Sanders over the course of two days, March 3 and 4, 2014.

During these early March meetings, the Sanders explained that SG Bancorp intended to execute a new business strategy on two fronts. First, SG Bancorp intended to build out a regional community banking operation for the growing Latino population in the southwestern United States. Second, SG Bancorp intended to build out a full-service mortgage platform called SG Capital Partners, focusing on origination, servicing, capital markets, and investment management. To launch SG Capital Partners, SG Bancorp sought to raise $100 million from existing SG Bancorp stockholders, including CHC.

---

[2] Cole later transferred his ownership interests in SG Bancorp to CHC, and CHC has held stock in SG Bancorp since at least April 5, 2013.

The Sanders referred to various slide decks during their March meeting with Cole (collectively, the "Management Presentation"). The Management Presentation attributed the strength of SG Capital Partners to its management team, headed by Kevin Gasvoda and Daniel Sparks. Both are former senior mortgage executives from Goldman Sachs, and the Management Presentation described them as a "[s]easoned management team with experience leading origination, servicing, and capital markets."[3]

In March 2014, CHC agreed to invest $25 million in exchange for 2,008,003 shares of SG Bancorp. The terms of this agreement were memorialized in a Subscription Agreement dated March 13, 2014.[4]

Three provisions of the Subscription Agreement are relevant to the parties' positions in this litigation. First, Schedule 3(o) discloses any litigation "that have not or would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect."[5] Schedule 3(o) discloses two employment disputes alleging wrongful termination and discriminatory conduct; two indemnity and/or repurchasing demands arising from SG Bancorp's prior acquisitions; unidentified collections actions in state and federal court; and undetermined potential future

---

[3] Sec. Am. Compl. ¶ 28.

[4] *Id*. Ex. 2.

[5] *Id.* Ex. 2, Sch. 3(o).

3

liabilities associated with penalties from audit and environmental authorities. Schedule 3(o) does not identify then-pending lawsuits against Gasvoda and Sparks, discussed below.

Second, the Subscription Agreement contains an anti-reliance provision (the "Anti-Reliance Provision"), in which CHC warrants that it "is not relying on any representations or warranties from [SG Bancorp] . . . other than representations and warranties . . . contained in [the Subscription Agreement]."[6]

Third, the Subscription Agreement contains a provision choosing Delaware as the governing law and the exclusive forum for resolving disputes "arising out of or relating to" the Subscription Agreement.[7]

In November 2014, SG Bancorp disclosed to its investors that "changes in the market environment will not allow SG Capital Partners' business to be fully developed within a regulated, bank holding company structure environment (as had originally been planned)."[8] As a result, SG Bancorp decided to spin off SG Capital Partners through an exchange offer, whereby five existing SG Bancorp stockholders acquired ownership of the mortgage unit.

---

[6] *Id.* Ex. 2 § 2(g).

[7] *Id.* Ex. 2 § 10(a).

[8] *Id.* ¶ 81.

In December 2014, SG Bancorp issued an Exchange Offer Memorandum in connection with the SG Capital Partners spin-off. SG Bancorp disclosed that it had become "increasingly concerned . . . [about] whether certain activities, such as proprietary trading and sponsoring funds that would be considered 'covered funds' under the Volcker Rule [a federal regulation], could be permissibly conducted within a subsidiary of [SG Bancorp]."[9] SG Bancorp further disclosed that Gasvoda and Sparks "were named as defendants in certain currently pending lawsuits involving, among other things, allegations of violations of federal securities laws,"[10] which "could result in adverse judgments, settlements, fines, penalties, injunctions or other relief – any of which, depending on their outcome, could adversely impact [SG Capital Partners'] reputation and/or its business, financial condition and results of operations."[11]

In 2016, SG Bancorp and another company, Sunflower Bancorp, merged into Defendant FirstSun Capital Bancorp. In connection with the merger, CHC executed a Consent and Support Agreement. The Consent and Support Agreement includes

---

[9] *Id.* ¶ 84.

[10] *Id.* ¶ 85.

[11] *Id.*

a provision (the "Release") that released all claims relating to SG Bancorp shares other than any claim "in respect of knowing and willful fraud."[12]

CHC filed its Verified Complaint on May 17, 2018.[13] With Defendants' consent, CHC filed the Second Amended Complaint on June 7, 2019. Defendants moved to dismiss pursuant to Court of Chancery Rule 12(b)(6), and the parties fully briefed that motion by November 8, 2019.[14] The Court heard oral arguments on December 13, 2019.

## II. LEGAL ANALYSIS

Plaintiff brings two claims for fraud, one under Texas common law (Count One) and one under a Texas statute[15] (Count Two). Two alleged misrepresentations underlie both Counts. Plaintiff first alleges that SG Bancorp misrepresented the viability of the SG Capital Partners business model in the regulatory environment. Plaintiff next alleges that SG Bancorp misrepresented the existence of litigation against Gasvoda and Sparks and its effects on the regulatory approval of SG Bancorp's business plan.

---

[12] *Id.* ¶ 98; Dkt. 55, Defs.' Opening Br. in Supp. of Their Mot. to Dismiss the Verified Sec. Am. Compl. ("Defs.' Opening Br.") Ex. 4 § 6(a); Defs.' Opening Br. Ex. 5 § 6(a).

[13] Dkt. 1, Verified Compl.

[14] Defs.' Opening Br.; Dkt. 64, Answering Br. in Opp'n to Defs.' Mot. to Dismiss the Sec. Am. Compl. ("Pl.'s Answering Br."); Dkt. 69, Defs.' Reply Br. in Further Supp. of Their Mot. to Dismiss the Verified Sec. Am. Compl.

[15] Tex. Bus. & Com. Code § 27.01.

Under Rule 12(b)(6), the Court may grant a motion to dismiss if the complaint "fail[s] to state a claim on which relief can be granted."[16] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[17] When considering such a motion, the Court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[18] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[19]

In support of dismissal, Defendants argue that Plaintiff's claims are time-barred and barred by the Release. Defendants further argue Plaintiff has failed to plead a fraud claim because it has not pled actionable misstatements or omissions and cannot show reliance due to the Anti-Reliance Provision. This decision concludes that Plaintiff's claims are time-barred and thus does not resolve the remainder of Defendants' arguments.

---

[16] Ct. Ch. R. 12(b)(6).

[17] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[18] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[19] *Price v. E.I. du Pont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

"Laches is an equitable doctrine 'rooted in the maxim that equity aids the vigilant, not those who slumber on their rights.'"[20]  Although statutes of limitations exist at law and "traditionally do not apply directly to actions in equity," this Court "may apply them by analogy in determining whether" a claim is time-barred.[21]  That is, "[i]n this court, a party's failure to file within the analogous statute of limitation is, absent a tolling of the limitations period, typically conclusive evidence of laches."[22]  Although "affirmative defenses, such as laches, are not ordinarily well-suited"[23] for resolution on a motion to dismiss, dismissal is appropriate if "it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it."[24]

The parties agree that Plaintiff's fraud claims arise under Texas law, but they disagree over which state's law supplies the relevant statute of limitations.  They further dispute whether fraudulent concealment tolls the limitations period.

---

[20] *Kraft v. Wisdom Tree Invs., Inc.*, 145 A.3d 969, 974 (Del. 2016) (quoting *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009)).

[21] *Id.*

[22] *Territory of U.S.V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 808 (Del. Ch. 2007).

[23] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

[24] *Id.* at 183–84.

8

## A. Plaintiff's Claims Are Untimely.

For claims arising under foreign law, "a Delaware court follows a multistep process to identify the applicable statute of limitations."[25]  In this case, the analysis is the same for the common law and statutory fraud claims.[26]

At common law, the law of the forum supplies the limitations period.[27]  The common law rule is problematic to the extent that it encourages a plaintiff to shop for a forum with the longest limitations period.  Delaware adopted a borrowing

---

[25] *B.E. Capital Mgmt. Fund LP v. Fund.com Inc.*, 171 A.3d 140, 147–48 (Del. Ch. 2017).

[26] An extra level of analysis applies to the statutory fraud claim.  For claims arising under a foreign statute, a court must also determine whether the foreign limitations period is a substantive "built-in" aspect of the statutory right rather than a procedural issue.  *See Natale v. Upjohn Co.*, 236 F. Supp. 37, 40 (D. Del. 1964) (interpreting Delaware law to hold that "when a statute in the state where a cause of action arises creates the substantive right which is asserted, and also includes a 'built-in' limitation, the Delaware 'borrowing statute' is without application" (citing *Pack v. Beech Aircraft*, 132 A.2d 54, 67 (Del. 1957)).  Generally, a limitations period is "built-in" where "a statute gives a new right or creates a new liability and the same section or act limits the time within which it can be enforced." *Id.* at 41; *see also* Ibrahim J. Wani, *Borrowing Statutes, Statutes of Limitations and Modern Choice of Law*, 57 UMKC L. Rev. 681, 701 (1989).  The Texas statute underlying Count Two does not include a specific limitations period.  *See* Tex. Bus. & Com. Code § 27.01; *see also Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007).  Thus, the statute of limitations is not a substantive aspect of the statutory right, and the analysis of the limitations period for the statutory claim tracks that of the common law claim.

[27] *Beech Aircraft*, 132 A.2d at 57 (citing the "common law rule that the matter of limitation of actions is controlled by the law of the forum"); *see also* Restatement (Second) of Conflict of Laws § 142(1) (Am. Law. Inst. 1971) (citing the common law rule that "[a]n action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state"); Dylan Consla & Brandon Mordue, *Stop Borrowing Trouble: Clarifying the Saudi Basic Exception to Delaware's Borrowing Statute*, 41 Del. J. Corp. L. 29, 32 & n.9 (2016) (citing authorities).

9

statute to address these forum-shopping concerns.[28] The borrowing statute eliminates forum-shopping incentives by instructing a Delaware court to compare the limitations periods that would apply under Delaware law and the law of the foreign jurisdiction. If the latter is shorter, the statute directs the court to borrow it.[29]

The borrowing statute was designed to address the scenario where a plaintiff's claim arises under foreign law and would otherwise be barred by the foreign law's statute of limitations. In that scenario, the borrowing statute "prevent[s] the plaintiff from circumventing the shorter limitations period mandated by the jurisdiction where the cause of action arose."[30] The text of the borrowing statute, however, directs the court to apply "whichever" limitations period "is shorter."[31] Therefore, where the foreign limitations period is the longer option, the borrowing statute

---

[28] *Beech Aircraft*, 132 A.2d at 57 (referring to the borrowing statute as "an act to prevent 'forum-shopping'").

[29] *See generally id.*; *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1, 16–18 (Del. 2005) (noting the purpose of the borrowing statute is to prevent a plaintiff from "shopping for the most favorable forum" (quoting *Beech Aircraft*, 132 A.2d at 58)).

[30] *Saudi Basic*, 866 A.2d at 17.

[31] 10 *Del. C.* § 8121 ("Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of *whichever is shorter*, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply." (emphasis added)).

10

effectively defaults to the common law rule it supplanted, and the court applies Delaware's limitations period.

Because the borrowing statute was intended to eliminate forum-shopping incentives, the statute is most true to its purpose when applied to claimants who choose to litigate in Delaware. But the text of the borrowing statute applies with equal force to claimants who do not choose to litigate in Delaware. When confronted with the latter circumstance in *Saudi Basic*, the Delaware Supreme Court crafted an exception to the borrowing statute.[32]

In *Saudi Basic*, the plaintiff filed an action for declaratory judgment in Delaware in order to draw out the defendant's anticipated counterclaims. The plaintiff moved to dismiss the counterclaims as time-barred, arguing that the borrowing statute required application of Delaware's three-year limitations period rather than Saudi Arabia's eternal limitations period. In a bench ruling, the Superior Court found that the plaintiff had chosen to file in Delaware to use Delaware's shorter limitations period as a sword against the defendant's counterclaims. The Superior Court reasoned that applying the borrowing statute would reward the plaintiff for forum shopping, which would "basically turn the borrowing statute on its head for the purpose for which it was enacted."[33] The Delaware Supreme Court

---

[32] *Saudi Basic*, 866 A.2d 1.

[33] *Id.* at 15.

11

affirmed, holding that applying the borrowing statute would "subvert the statute's fundamental purpose, by enabling [the plaintiff] to prevail on a limitations defense that would never have been available to it . . . in the jurisdiction where the cause of action arose."[34]

As this Court previously observed, "[t]he *Saudi Basic* decision appears to have engendered some uncertainty as to when the [b]orrowing [s]tatute applies,"[35] and Delaware courts applying its holding have adopted different approaches resulting in inconsistent outcomes. One scholarly article helpfully classifies decisions applying *Saudi Basic* into two categories: a broad approach and a narrow approach.[36]

The broad approach interprets *Saudi Basic* to hold that the borrowing statute does not apply whenever the Delaware limitations period is shorter than the

---

[34] *Id.* at 17–18 (internal citation omitted).

[35] *TrustCo v. Mathews*, 2015 WL 295373, at *7 (Del. Ch. Jan. 22, 2015).

[36] *See* Consla & Mordue, *supra* note 27, at 38–45. Consla and Mordue identified as a third category what they refer to as the "textual" approach of *B. Lewis Prods., Inc. v. Bean*, 2005 WL 273298 (D. Del. Jan. 28, 2005). In *B. Lewis*, the court reasoned that the phrases "bringing an action" and "brought an action" as used in the borrowing statute do not necessarily include "actions" as that term is used for statute of limitations purposes. 2005 WL 273298, at *2. The court thus concluded that the borrowing statute might only apply to claims "brought by" the original plaintiff. *Id.* As Consla and Mordue observe, the textual argument advanced in *B. Lewis* does not go far enough to solve the problem motivating the *Saudi Basic* decision because it does not address forced-forum concerns in the bankruptcy or other contexts. *See* Consla & Mordue, *supra* note 27, at 50–51.

12

limitations period of the foreign jurisdiction where the claim arose.[37] Decisions in this category "focus on the discussion [in *Saudi Basic*] of the anti-forum-shopping policy rationale."[38] One decision reasonably concluded that a faithful interpretation of the wide-sweeping language of *Saudi Basic* requires trial courts to adopt the broad approach.[39] The broad approach provides the benefit of a bright-line rule (that the limitations period of the foreign forum always applies), which promotes simplicity in application and predictability in outcome.

---

[37] *See* Consla & Mordue, *supra* note 27, at 39 (including within the category of decisions adopting the "broad approach" *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *5 (Del. Super. Apr. 16, 2014) and *In re Mervyn's Hldgs., LLC*, 426 B.R. 488, 503 (Bankr. D. Del. 2010)); *id.* 45 (observing that in declining to apply the borrowing statute literally, *Juran v. Bron*, 2000 WL 1521478, at *12 (Del. Ch. Oct. 6, 2000) advanced the same arguments made in favor of the broad approach in *Furnari* and *Mervyn's Hldgs.* before *Saudi Basic* was decided); *see also Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *9 (Del. Ch. Jan. 12, 2015) (declining to apply plain language of borrowing statute where the foreign limitations period was longer than Delaware's limitations period); *B.E. Capital*, 171 A.3d at 148 (same, citing *Bear Stearns*).

[38] Consla & Mordue*, supra* note 27, at 38; *see also Furnari*, 2014 WL 1678419, at *5 (applying foreign limitations period and commenting that the foreign forum "has longer limitations period than Delaware, making the facts of this case the opposite of what the Borrowing Statute seeks to prevent"); *Mervyn's Hldgs.*, 426 B.R. at 503 (applying foreign limitations period and commenting that "[t]his is not a case where forum shopping might even remotely be an issue").

[39] *Bear Stearns*, 2015 WL 139731, at *9 (observing that the Court of Chancery "is bound to follow the Delaware Supreme Court's opinion in *Saudi Basic*" under which "the [b]orrowing [s]tatute does not apply if it would enable the party seeking dismissal 'to prevail on a limitations defense that would never have been available to it had the . . . claims been brought in the jurisdiction where the cause of action arose'" (quoting *Saudi Basic*, 866 A.2d at 17–18)).

Although appealing in many ways, the broad approach suffers infirmities. For one, a broad interpretation exacerbates a problem in *Saudi Basic*, which is that the decision is not rooted in principles of statutory construction.[40] Under Delaware law, "[t]he goal of statutory construction is to determine and give effect to legislative intent,"[41] and the unambiguous language of the statute is paramount when discerning that intent.[42] Long accepted canons of statutory construction direct that each part of a statute "should be read in light of every other part or section to produce a harmonious whole,"[43] and "words in a statute should not be constructed as surplusage if there is a reasonable construction which will give them meaning."[44] Courts are permitted to ignore the plain language of a statute only when "absurdity or injustice would result from a strict construction."[45] The broad approach violates

---

[40] *But see TrustCo*, 2015 WL 295373, at *7 (noting that the holding of *Saudi Basic* can be reconciled with another canon of statutory construction, the absurdity canon, if the decision is narrowly construed).

[41] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999); *see also* Consla & Mordue, *supra* note 27, at 46 n.98.

[42] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) ("Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls.").

[43] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1245 (Del. 1985)).

[44] *Id.* (citing *In re Estate of Smith*, 467 A.2d 1274, 1280 (Del. Ch. 1983)).

[45] *Reddy v. PMA Ins. Co.*, 201 A.3d 1281, 1288 (Del. 2011).

these principles by ignoring the borrowing statute's phrase "whichever is shorter"[46] in all circumstances, not just when absurdity would result.[47]

The broad approach also departs dramatically from the common law rule that the forum state supplies the relevant limitations period. In effect, the broad approach *never* applies the forum's limitations period, a complete reversal from the common law rule that *always* defaulted to the forum's limitations period. In at least one case, this Court concluded that the General Assembly did not intend to dramatically depart from common law principles when adopting the borrowing statute.[48]

The narrow approach, which appears to be the majority view, interprets *Saudi Basic* to hold that the plain language of the borrowing statute governs unless the party asserting the underlying claim was forced into a Delaware forum.[49] The

---

[46] 10 *Del. C.* § 8121.

[47] *See generally TrustCo*, 2015 WL 295373, at *7.

[48] *See Beech Aircraft*, 132 A.2d at 58 (declining to impute an intent to "import an innovation into [Delaware's] substantive law" when construing the meaning of the last sentence of the borrowing statute).

[49] *See* Consla & Mordue, *supra* note 27, at 39 (including within the category of decisions that adopted the "narrow approach" *Huffington v. T.C. Gp., LLC*, 2012 WL 1415930, at *8–9 (Del. Super. Apr. 18, 2012), and *TL of Florida, Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 327 (D. Del. 2014)); *see also TrustCo*, 2015 WL 295373, at *9 (expressly rejecting broad interpretation of *Saudi Basic* in favor of a narrow approach); *In re Asbestos Litig.*, 2015 WL 5168121, at *3 (Del. Super. Sept. 1, 2015) (citing *Huffington*, *TL of Florida*, and *TrustCo* favorably when applying narrow approach); *Machala v. Boehringer Ingelheim Pharms., Inc.*, 2017 WL 2814728, at *4–5 (Del. Super. June 29, 2017) (same).

Some decisions have applied reasoning or reached results consistent with the narrow approach without expressly rejecting the broader approach. *See* Consla & Mordue, *supra* note 27, at 40–41 (identifying within this category *In re Washington Mutual, Inc.*, 2010 WL 3238903, at *5 (Bankr. D. Del. Aug. 13, 2010)); *see also Grynberg v. Total*

15

"forced" claims in *Saudi Basic* were compulsory counterclaims, but the reasoning of the approach applies equally to creditors forced to file claims against the corporation in the debtor's chosen forum. The narrow approach can be reconciled with principles of statutory construction by operation of the absurd results principle,[50] and proponents of the approach say that it "better targets incentives for forum shopping."[51]

The dueling reasonable interpretations of *Saudi Basic* underscore the need for greater clarity—in the form of legislative action or binding decisional authority—in this area of law.[52] Lacking such guidance here, this decision adopts a narrow

---

*Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 679–80 (D. Del. 2012) (applying Delaware's shorter limitations period to plaintiff's claims where plaintiff voluntarily chose to litigate in Delaware, observing that a literal construction would not subvert the purpose of the statute); *In re W.R. Grace & Co.*, 418 B.R. 511, 518 n.4 (Bankr. D. Del. 2009) (observing in dicta that borrowing statute should not apply to bar creditors' claims brought in debtor-selected forum without expressly rejecting the broader interpretation).

A few Delaware decisions applying the borrowing statute literally have omitted reference to *Saudi Basic*, suggesting endorsement of the narrow approach. *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs., LLC*, 2012 WL 3201139, at *16 (Del. Ch. Aug. 7, 2012) (applying borrowing statute to dismiss plaintiff's claims that arose outside of Delaware without mentioning the *Saudi Basic* exception); *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *4 (Del. Super. Sept. 20, 2010) (distinguishing the facts of *W.R. Grace* and applying Delaware's shorter limitations period to dismiss plaintiff's claims where plaintiff voluntarily chose to litigate in Delaware).

[50] *TrustCo*, 2015 WL 295373, at *7.

[51] Consla & Mordue, *supra* note 27, at 51.

[52] *See generally* C. Stephen Bigler & Jennifer V. Barrett, *What Statute of Limitations Applies? The Effect of the Delaware Borrowing Statute on Claims Governed by Foreign Law*, A.B.A. Bus. L. Today (Mar. 12, 2015), https://businesslawtoday.org/2015/03/what-statute-of-limitations-applies-the-effect-of-the-delaware-borrowing-statute-on-claims-

16

interpretation of *Saudi Basic*, which least offends principles of statutory construction and best targets the statute's purpose. Under the narrow approach, the court first applies the plain language of borrowing statute. If Delaware's limitations period applies, the court next determines whether the party asserting the underlying claim was forced to file in Delaware. If the party asserting the underlying claims was forced to file in Delaware, then the court applies the foreign limitations period.

In this case, the borrowing statute requires applying Delaware's three-year limitations period because it is shorter than Texas's four-year limitations period. The question is thus whether Plaintiff was forced to file in Delaware. It was not. Plaintiff filed in Delaware pursuant to the forum selection clause of the Subscription Agreement,[53] whereby Plaintiff voluntarily committed to file claims "arising out of or relating to" the Subscription Agreement in Delaware.[54] Plaintiff does not argue that the forum selection clause was procured fraudulently or otherwise seek to invalidate the forum selection clause on any ground. Thus, it cannot be said that the forum selection provision caused Plaintiff to file in Delaware involuntarily.[55]

---

governed-by-foreign-law/ (describing how recent cases "demonstrate[d] the unanticipated issues that can arise when Delaware courts are asked to consider contractual claims that have arisen under the law of another jurisdiction").

[53] *See* Pl.'s Answering Br. at 18.

[54] Sec. Am. Compl. Ex. 2 § 10(a).

[55] At least one Delaware case has applied the borrowing statute to bar a claim filed in Delaware pursuant to a forum selection clause. *Huffington*, 2012 WL 1415930, at *8–9 (expressly rejecting broad interpretation of *Saudi Basic* as applying to all but the "typical"

Because Plaintiff was not forced to file in Delaware, Delaware's three-year statute of limitations applies.

## B. No Tolling Doctrine Applies.

The original complaint in this action was filed on May 17, 2018, rendering stale any claims that accrued before May 17, 2015. Counts One and Two are therefore time-barred unless Plaintiff can show that a tolling doctrine applies.

Plaintiff argues that the doctrine of fraudulent concealment tolls the statute of limitations in this case.[56] Fraudulent concealment occurs where an affirmative act of concealment or a misrepresentation was used to "put the plaintiff 'off the trail of inquiry.'"[57] At the same time, "the trusting plaintiff still must be reasonably attentive to his interests,"[58] and the limitations period is only "suspended until his rights are discovered or until they could have been discovered by the exercise of reasonable diligence."[59] "Inquiry notice does not require full knowledge of the

---

case where plaintiff's delay in pursuing claims in Delaware was the byproduct of his attempts to avoid a Delaware forum selection clause); *see also* Consla & Mordue, *supra* note 27, at 53 (arguing that a plaintiff who filed in Delaware pursuant to a Delaware forum selection clause was not "forced" to file in Delaware and thus the plain language of the borrowing statute should apply under a narrow interpretation of *Saudi Basic*).

[56] Pl.'s Answering Br. at 21–22.

[57] *Krahmer v. Christie's, Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006) (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 531 (Del. Ch. 2005)).

[58] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *8 (Del. Ch. July 17, 1998) (emphasis removed).

[59] *Id.* at *5 (citing *Halpern v. Barran*, 313 A.2d 139, 143 (Del. 1973)).

material facts; rather, plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued, would lead to the discovery of the injury."[60]

Accepting the allegations in the Second Amended Complaint as true, Plaintiff was on inquiry notice—and, indeed, had actual notice—of the facts pertaining to the alleged misrepresentations as of December 2014 when SG Bancorp issued the Exchange Offer Memorandum. In relevant part, the Exchange Offer Memorandum stated that SG Capital Partners was spun off from SG Bancorp because SG Bancorp "became increasingly concerned . . . [about] whether certain activities, such as proprietary trading and sponsoring funds that would be considered 'covered funds' under the Volcker Rule, could be permissibly conducted within a subsidiary of [SG Bancorp]."[61] The Exchange Offer Memorandum further disclosed that Gasvoda and Sparks "were named as defendants in certain currently pending lawsuits involving, among other things, allegations of violations of federal securities laws."[62] Plaintiff's rights with respect to the alleged misrepresentations were therefore discovered, or could have been discovered with the exercise of reasonable diligence, as of

---

[60] *Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005).

[61] Sec. Am. Compl. ¶ 84.

[62] *Id.* ¶ 85.

19

December 2014.  Thus, Plaintiff's claims accrued prior to May 17, 2015, and they are time-barred.

## III.  CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint is GRANTED.